K822.1288 et al. Cadillac of Naperville, Inc. Petitioner v. National Labor Relations Board. Mr. McHarg for the petitioner, Ms. Campbell for the respondent. Good morning, your honors, and may it please the court. My name is Michael Patrick McHarg, Sr. on behalf of Appellant Cadillac of Naperville. I think as your honors are well aware, this case has what could best be described as a Byzantine procedural posture. Having been here once before, remanded, reversed by the board, brought back, and then in the middle of my appeal, changed by the board yet again. Nonetheless, here we are. But really, to me, this case comes down to- You haven't argued for another remand. We are not- You don't want to do more. I think, to be honest, your honor, A, we think we can win either way, but B, I don't want to mislead this court. I think my client has some litigation exhaustion, so we'll just make our argument and understand where we are. Under any standard, I know Lionel Astemer's is before the Fifth Circuit, so perhaps even the board standard remains unclear, but we're still just dealing with common sense in the workplace. What kind of behavior can an employee get away with and be left without punishment? Under the Atlantic standard, you have this question of where's the place? The law is inconsistent on that. On the one hand, they say inside the office, it's heads we win, tails you lose. In an office, we win. Outside an office, we win. Then the question comes up of the subject matter. Then to us, we take most happened here was extreme and directed at the owner of the company in his very own office. The board has never, under either time, the board failed to take into consideration exactly what happened in that office. Just to be clear, when you say under either standard, there's no different arguments you would make under an Atlantic Steel than the right line. You're making the same points here under both. You should win under either standard. That's correct. There's nothing else that you would argue if officially we were applying Atlantic Steel. So, under right line, there's two steps. Prima facie case that the action discharge was out of me what you've been saying today fits mostly in the second bucket that because of the severity of this statement, you would have fired him anyway. My question is, are you making an argument that there is no evidence of animus that the board could rely on for the prima facie for step one under right line? If we were analyzing the case under right line, I believe that we have demonstrated that there was no nexus, that the board relied upon a June 29th conversation for I believe it was a September 17th discharge, a throwaway comment that... So, I agree we can nitpick about some of the pieces of evidence. And in this footnote, the board cited six. The one that really stood out to me is just what happened on the morning of firing, right? Vespicus comes in and the... I hope you forgive me for paraphrasing, but Liscaris basically says, you've been the ringleader of this strike and I don't want you to work here anymore. It seems pretty explicit statement that he is not a fan of Vespicus because he's participated in the strike. Well, he was discussing that with the entire... I mean, the entirety of the union leadership, right? The business agent was there. The president of the union was there. Mr. Vespicus was there. Liscaris is trying to negotiate to remove all of the strikers at that time. So, you're correct, your honor. He was telling them that he was trying to offer some sort of settlement to get them to go elsewhere to work. That is correct. And then Vespicus calls him a I'm sorry. It's not a settlement. The concern from the board was that Mr. Liscaris was explicit that he doesn't want any union members working in his shop now, any union members that went on a strike. He doesn't want any of them there. That's correct. The conversation was hostile. Their exercise of their rights under the NLRA to both join a union and engage in collective action like a strike? I do not deny, your honor, that there's more. Fascia case. Unanimous. Unanimous. That's correct. In response to Judge Garcia's question, you are just focused on we would have fired him anyhow. We would have fired him. That's correct. It would be a difficult case for us to say that there was no right fascia case. I'm just trying to make sure I understand the context completely here. It's not that the way that the board's analysis went. It's not the case that Vespicus, I'm butchering his name, I'm sure, that his behavior couldn't be subject to any discipline, right? They weren't saying that a right line or Atlantic Steel, like nothing could be done to him. The question was really whether the termination was appropriate, right? That's correct. And so how, I guess, how do you win when there was no evidence that the company had ever terminated anyone for saying anything similar and that the company never produced a code of conduct that would justify termination? I understand your question, your honor. As we have stated, I believe in both of our briefs, there's certain conduct that you simply aren't going to be able to replicate. There are certain things that a standard of conduct is not necessarily, as we argue in our brief, going to say, don't commit a felony or wear pants to work. But if you violate certain common sense principles, you're going to lose your job, right? I had a situation once where a guy was cleaning his rifle at his workstation. We didn't necessarily have a clean your rifle at work and pointed at your coworkers. But did you have any code of conduct at all though? I believe there was a written code of conduct. I don't believe it is in, I don't believe we submitted it into evidence. It was seven years ago. I don't recall. I'm sorry. I believe we just dragged the code of conduct out through the testimony of Mr. Liscaris and screaming a vile epithet, climbing around his desk, we thought at the time, warranted summary termination. The ALJ found that he sort of muttered this on his way out the door. Are you challenging the ALJ's fact findings? We can't do that really. It's a practical matter. I don't think he found it as a mutterer. I think that it was on the way out. He said at the, no, on the way out the door was the discussion between the business agent and the employee about whether or not they heard the discussion between Liscaris and Mr. Bisbigas. Questions? No, we'll wait for rebuttal. Thank you. Thank you. Thank you. Greetings, your honors, and may it please the court. My name is Elizabeth Campbell, and I represent the National Labor Relations Board. After a highly contentious strike, Cadillac of Naperville fired Mr. John Bisbigas, who represented the company's mechanics as their union steward while he was attempting to negotiate return-to-work procedures. The evidence of the company's hostility towards Mr. Bisbigas' union activity is overwhelming. In the six intervening years, the board's conclusion has never wavered. The termination of Mr. Bisbigas violated Section 8A3 and 1 of the National Labor Relations Act. It is long past time to remedy that violation. You would agree that the company could have been justified in disciplining Mr. Bisbigas, right? Imposing some discipline, right? Your honor, I can't speak for the board on what it might have done had the employer disciplined in a lesser manner. I'm not asking you what they might have done, but that would be a reasonable action that could be sustainable under board law. Under board law, an employer can discipline an employee for misconduct. Full stop. That's not really a question. An employer is not forbidden ever from disciplining an employee for misconduct unless it's done with anti-union animus or unless the employee was retained to the protection of the act under the Atlantic Steel analysis at the time when they engaged in the discipline. What I'm a little confused about is, so I came here last time and you said we're supposed to apply right line. The board did Atlantic Steel and then the board changed its mind and said we're going to do right line. We remanded for right line. They applied right line and now it comes here again and now they're saying line elastomers actually. We're going back to Atlantic Steel and line elastomers said not only we're going to apply Atlantic Steel, we're making this decision retroactive, which means line elastomers applies to this case. And so how can we, he doesn't want to, I'll treat him like a game and this is agency review not just a court review and it seems hard for me to understand how we can uphold a decision under right line when the board has said that's not the correct law anymore. I understand your honor. I think in terms of the retroactivity analysis, the board law is quite clear that when the board makes a decision that's retroactive that absolutely applies to cases pending before the agency. Applied to cases pending in court? The board has discretion to ask for a remand when a case is in court, when the agency issues a change in law. Here the agency acted very reasonably. I think this court would agree given the fact that this is a very unique set of circumstances. So in particular, you're right, your honor, the judge here originally applied right line and right line itself remains good law. I would note it's correct. It would not necessarily be applied in cases like this moving forward, but a right line motive analysis is still a proper way to find a violation under section 8A3 and 1. So in that sense, that makes this case unique. And in addition, this case is also unique in the sense that the standard that the board has now adopted in line elastomers was a preexisting standard. So Atlantic Steel has already been applied in the facts of this case in the 2019 decision and order before you. That's a very unusual circumstance when the board or any agency changes law. It's not very typical that the law that it changes to has already been applied to the facts before the court. So in this case, the agency did choose an extra sentence discretion to stand behind the decision and order before you analyzed under right line. And I think it's important to keep Mr. Bespikis in mind. I think the concerns about his failure to receive the remedy to which he is entitled under the act, another remand would not be in interest of justice for him, for this court, for the board's resources. We also need to keep the employer in mind too. They shouldn't be drugged round after round after round after round. It's not, I understand your point about Mr. Bespikis, but it's also for the employer unfair when the board keeps changing the rules of the game. Correct, your honor, which was another reason to stand behind the decision and order before this court, which is under right line. I'll have, I'll note that the employer has from the very beginning in its very first brief post-hearing brief to the ALJ has asked for right line to apply to the facts of this case. It continues to not insist on a remand and right line is being applied. It's supposed to apply on appeal the law in effect at the time of the appeal. That's where I'm, I understand the arguments in that case, but so you're asking us to apply the law that's not in effect at the time of appeal. Or you're asking us to decide this under Atlantic Steel. I believe the side is on the ground and they, it doesn't matter either way, either they win or you win either way. My answer to your question, your honor, is yes. I think you can do any of the above. Here, right line itself remains good law. Right line is an unlawful motivation situation. Correct, your honor, but the board has had opportunities to apply both. An answer you said earlier would mean it's the right test for this case. Because you said when the board declares one of its decisions retroactive, that's only retroactive as cases pending before the board. And this case was final and on appeal when this new decision came around, right? Correct, your honor. There's, well, I want to be very careful with my language here. I appreciate you still would have discretion to ask us for a remand. Correct. But it does not apply of its own force in a court. There is an understanding that when, for example, the record is filed with the court, the board doesn't have jurisdiction. So that would be an argument. I would not want to suggest that the board could not, would not be able to seek a remand if it wanted to. However, in this case, the agency has chosen not to seek a remand and for good reason and stands behind the decision in order currently before this court. That being said, if this court is uncomfortable applying right line and General Motors, given that line last versus good law, I think the Wyman Gordon case law that is good, good law across the circuits and that the DC circuit has relied on repeatedly, which is that if the, if this court were to remand, it's a sort of similar to a harmless error argument. Sure. The, the, maybe now you could argue now the analysis that should have, that should be done in a case like this is Atlantic steel, but if so, okay. So this court then remands again for the board to apply Atlantic steel again, really it's clear from the record. And I don't think there's a reasonable doubt that the board, if it were to apply Atlantic steel would come to the same reasonable conclusion that the employer violated section eight, a three and one here. I appreciate your point about filing the record, but actually in the NLRB, the cases aren't final because they're unenforceable until a court grants enforcement or not. And you have a cross application here for enforcement. Yes, your the board's view is that the cross application for enforcement should be decided under right line or next deal. Yeah. The board stands behind its decision under right line and an unlawful motivation analysis. That being said, should this court feel that I'm asking the board's position on what basis it should, because you've asked for enforcement or you've got a cross application for enforcement. This were now, it might win and we'll all be moot, but you've asked for enforcement. And so what is your position on the legal rule that should be applied given Lionel Astemer's for the cross application for enforcement? Your honor, the agency stands behind its unlawful motive analysis under a right line as a finding of a section 83 and one violation. The agency also believes that this court can look at the writing on the wall, look at the record in this case and know that the agency would come to the same reasonable conclusion. Were it to apply the current standard, which is Lionel Astemer's, which would again be, which this court has repeatedly upheld cases decided under both standards. And so the agency does stand behind its decision in order before this court, you know, I'm not Henry Chenery might forbid me from saying, just go with Atlantic Steel. And we want to be conscious of that. We want to be aware of this, that, and therefore this, the board does stand behind its unlawful motive analysis. However, I think the Wyman Gordon and those other exceptions that I cited, the Wyman Gordon exception that I cited about not turning, like your honor said, not turning an agency's decision into a ping pong game with the courts. There's no reason to remand this case and have it decided again under the board's current standard, given that the record is quite, quite clear that the agency would come to the same reasonable conclusion. If there are no further questions, your honor, I thank you very much for your time. Thank you very much. Thank you. We'll round up and give you two minutes. Thank you, your honor. I would just say as to that last comment, I'm a little nervous about conceding that we can just assume that the board would do the same thing with this case. I mean, the fact is they never did. To your question, your honor, about is before this court, this case was remanded to the board and was before the board at the time Lyon Elastomers was decided. So Lyon Elastomers retroactive application, their cross enforcement is on the Lyon Elastomers standard. But back to our original argument. The board has applied both Atlantic Steel and RightLine to your case. You have your challenging, certainly the latest decision under RightLine, but they've applied. First time they applied Atlantic Steel and you said apply RightLine and you got what you asked for and now they've applied RightLine. So I think all she was saying is the board has already applied both. So, and you said your arguments as to error, which are before us, are the same under both tests. Can I stand by that? As this court held at Felix Industries and then later in Ed Trans, there is a way to get to decency in the workplace at Trans Court. The union took the positions perfectly acceptable to use the most offensive and derogatory racial or sexual epithets so long as that's connected to union organizing and it's unfair to expect members to comport themselves with civility and decorum and the court went on and said working people are capable of discussing matters intelligently and in generally acceptable language. That overarching principle applies here. This is a case about workplace decency, about not tolerating insulting attacks. At least by mechanics, but Mr. Lasarkas had some pretty ripe language himself before he spoke, so it's a little hard to say that foul language is not tolerated in the workplace. Unless it's that it's only tolerated by Mr. Lasarkas? Not at all, Your Honor, but if I stub my toe and yell something, that's one thing. It was directed to Mr. Bespikis because it was you get the F out of here or I'm going to F you out of here. That was after Mr. Bespikis called him a liar. I don't recall if he swore or not and there was an argument in his office. That's how they disagreed on recollections, but Mr. Bespikis had not used any foul language at that point. And I'm just trying to ask this because you've talked about and it's a relevant concern about the ability, at least when it comes to sexually and racially derogatory language of employers, to ensure that they have a workplace atmosphere that is free of such hostility. But I thought this is a case of just sort of ordinary profanity and I'm trying to understand what your description of the workplace is because it doesn't seem to be one where profanity is not used. Not saying it would be. There's a difference between profanity, directing profanity at somebody. He told him to get out of the office. He did swear, but he didn't insult Mr. Bespikis directly. He didn't say something that would have threatened him or demeaned him. And the board has since the 80s, insulting attacks need not be tolerated. Thank you, Ms. Pam. We ask for a reversal and happy holidays.
judges: Millett, Wilkins, Garcia